IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02613-WDM-MEH

EUGENIO NAVARRO, JR.,

      Petitioner,
v.

RON LEYBA and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

## RECOMMENDATION FOR DISMISSAL

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #5]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation. For the reasons set forth below, the Court recommends that the Application be **denied**.

**I.    Procedural and Factual Background**

Petitioner Eugenio Navarro was convicted in state court for sale of a Schedule II controlled substance and conspiracy to sell a Schedule II controlled substance. He was acquitted on the charge of possession with intent to distribute for the cocaine found on the ground near where he was arrested. Because of a prior conviction for possession with intent to distribute, Petitioner received an aggravated sentence of 32-years for each count, to be served concurrently. On direct appeal, the Colorado Court of Appeals vacated Petitioner's conviction for conspiracy. The Colorado Supreme Court initially granted the petition for writ of certiorari and vacated his conviction for sale of a controlled substance as well. Upon petition for rehearing, the Court withdrew its opinion and denied

the writ of certiorari as improvidently granted. Petitioner subsequently filed a Rule 35(c) post-conviction motion. He appealed the denial of that motion, and the Colorado Court of Appeals affirmed. Petitioner did not immediately petition for writ of certiorari, and when he did, the Colorado Supreme Court denied it as untimely. Petitioner then filed the instant Writ of Habeas. Petitioner presents the following claims for relief: (1) the "Wharton Rule" should have prevented his conviction for conspiracy; (2) hearsay evidence was improperly admitted and, without this evidence, the evidence was insufficient to support a conviction for sale of a controlled substance; (3) Petitioner's trial attorney rendered ineffective assistance of counsel; (4) Petitioner's 32-year sentence violated his right to due process; (5) Petitioner was denied equal protection under the constitution; (6) Petitioner was denied his right to confront the witnesses at his sentencing hearing; and (7) evidence seized in an unconstitutional search and seizure was admitted against Petitioner at trial. Application at pp. 6–12.

The following facts were presented at Petitioner's trial. An informant offered to assist police with a controlled purchase of cocaine, to reduce his pending felony charge. The informant wore a wire and met with a supplier, who stated that he could purchase an "eightball" of cocaine from a source in Longmont, Colorado, the Petitioner. The police provided the informant with two one-hundred-dollar bills, whose serial numbers had been recorded. The informant and the supplier met at the supplier's apartment and drove to Longmont. The supplier described his source as a short, Hispanic male with an ankle bracelet who was in an alcohol class at the County Building. Before meeting with Petitioner, the supplier asked the informant for the cash so that he could first purchase beer. After this purchase, the two drove the County Building to meet Petitioner. While the informant waited in the car, the supplier left the vehicle and entered a vehicle occupied by Petitioner. Approximately five minutes later, the supplier returned to the car and stated to the informant, "Let's

go, we got it." The supplier then gave the informant 2.1 grams of cocaine.

Two days later, police searched Petitioner's house and arrested him outside his home. The search uncovered $5,900 from a leather jacket, including one of the one-hundred-dollar bills provided to the supplier by the informant two nights earlier. Officers also found two baggies of cocaine, weighing 4.6 grams and 3.0 grams respectively, on the ground near where Petitioner was arrested.

At trial, the supplier testified that he had lied to the informant about purchasing the cocaine from Petitioner. The supplier stated that he needed a ride to Longmont to make a payment to Petitioner for a loan. The supplier testified that he already had the cocaine when he left his house that night with the informant. In addition, Petitioner's sixteen-year-old daughter testified that she owned the leather jacket, and Petitioner's twenty-two-year-old daughter testified that the money recovered belong to her. Petitioner also introduced receipts to show previous payments on the loan from the supplier to Petitioner.

**II.     Discussion**

    **A.     Standard of Review**

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by

3

invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Based on the denial of certiorari review by the Colorado Supreme Court in Petitioner's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals, which represents the final substantive proceedings in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under AEDPA, an Petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*,

537 U.S. 3, 8 (2002). Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht*, habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

Finally, factual findings made by the state trial and appellate courts are presumed correct, with the Petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

### B. Timeliness of the Application

Petitioner's conviction became final on December 30, 2001, ninety days after the Colorado Supreme Court dismissed certiorari review of Petitioner's direct appeal on October 1, 2001. *Locke v. Saffle*, ,237 F.3d 1269, 1272 (10thi Cir. 2001) (finding that conviction does not become final, for purposes of § 2244, until the ninety day period for filing a petition for writ of certiorari to the United

5

States Supreme Court has run).  Petitioner filed his state post-conviction on August 12, 2002, allowing 224 days of the one-year statute of limitations to run and tolling the limitations period with 141 days remaining.  The Colorado Court of Appeals issued its Order on October 14, 2004.  Response, Exh. R.  Because Petitioner failed to timely file a petition for writ of certiorari with the Colorado Supreme Court, the Colorado Court of Appeals issued its Mandate on July 25, 2005.  Response, Exh. T.  The Colorado Supreme Court later denied Petitioner's petition for certiorari as untimely.  Response, Exh. S.  The original Application was filed on December 12, 2005.  *See Jarrett v. U.S. Sprint Comm. Co.*, 22 F.3d 256, 259 (10th Cir. 1994) (noting that a complaint is filed for purposes of the statute of limitations when it is tendered to the clerk with an IFP motion); *see also Houston v. Lack*, 487 U.S. 266 (1988) (recognizing the doctrine of constructive filing in prisoner cases).

Respondents argue that the statute of limitations began to run the second time when the Colorado Court of Appeals issued its Mandate.[1]  This argument, however, contradicts the Tenth Circuit's holding in *Burton v. Jones*, 209 Fed. Appx. 858 (10th Cir. 2006).  The Court in *Jones* concluded that the statute of limitations begins to run at the conclusion of the time frame for timely seeking appeal, not when the court of appeals issued its mandate.  *Id.* at 858-59.  Under Colorado

---

[1] Notably, under Respondents' argument, this petition is timely filed.  Respondents' calculation fails to consider the date Petitioner filed his motion to proceed *in forma pauperis* under 28 U.S.C. § 1915.  Thus, a total of 138 days passed from the date the mandate issued, which would leave 362 days after his state conviction became final.  Because Respondents have raised the issue of timeliness, albeit with incorrect legal arguments, the Court does not believe that Respondents have waived this defense.  *Day v. McDonough*, 547 U.S. 198, 126 S. Ct. 1675, 1679 (2006) ("[T]he Court would count it an abuse of discretion to override a State's *deliberate* waiver of the limitations defense") (emphasis added).  The Court will, therefore, address the timeliness argument under the appropriate deadlines.  *See id.* at 1679 ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.").

law, Petitioner had forty-five days from the date of the Colorado Court of Appeals' Order to timely petition for a writ of certiorari.  *See* Colo. App. R. 40, 52; *see also Espinoza v. Novak*, 13 Fed. Appx. 752, 753 (10th Cir. 2001).  Only during this time were Petitioner's post-conviction proceedings pending.  Thus, the statute of limitations began to run the second time on November 29, 2004, because November 28, 2004, was a Sunday.  *See* Colo. App. R. 26(a).  Without any tolling, this application was filed 378 days later, and a total of 602 days after his state conviction became final.

Petitioner asserts two arguments for tolling past July 25, 2005, which the Court will address as to the correct date of November 29, 2004.  First, Petitioner contends that his post-conviction proceedings were pending until the Colorado Supreme Court denied his petition for writ of certiorari as untimely.  A motion such as Petitioner's can only constitute a pending state-court application if Petitioner has followed the procedural rules of the state in filing such a motion.  *Gibson v. Klinger*, 232 F.3d 799, 807 (10th Cir. 2000).  For example, the court determined in *Gibson* that the Petitioner's first motion to appeal out of time did not toll the statute of limitations, because the Petitioner did not follow the proper state procedure.  *Id.*  The Petitioner's second motion followed proper state procedure and, therefore, tolled the statute of limitations.  *Id.*  Here, Petitioner did not seek leave to petition the Colorado Supreme Court out of time, as required by the Colorado Rules of Appellate Procedure.  Colo. App. R. 56.  Rather, Petitioner simply filed, out of time, a procedurally improper petition.  Thus, Petitioner's statute of limitations is not tolled during the pendency of his untimely petition for writ of certiorari before the Colorado Supreme Court.  *Hoggro v. Boone*, 150 F.3d 1223, 1227 (10th Cir. 1998) (holding that an untimely appeal does not toll the statute of limitations).

Second, Petitioner argues that the statute of limitations should be tolled while his first

7

Application for habeas, filed June 7, 2005, was pending. This Application was dismissed without prejudice on September 20, 2005, due to Petitioner's failure to demonstrate, or even allege, exhaustion of state remedies. *Navarro v. Leyba et al.*, No. 05-cv-01111-ZLW (D. Colo. 2005), Docket #10. "It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought," and therefore, "the limitation period is not tolled during the pendency of the dismissed action." *Brown v. Hartshorne Public School Dist. #1*, 926 F.2d 959, 961 (10th Cir. 1991). In fact, the United States Supreme Court has rejected this argument, because "[t]olling the limitation period for a federal habeas petition that is dismissed without prejudice would thus create more opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves." *Duncan v. Walker*, 533 U.S. 167, 180 (2001). Accordingly, Petitioner's first habeas application cannot toll the statute of limitations. Moreover, Petitioner's first petition was filed on June 7, 2005. *Navarro*, No. 05-cv-01111-ZLW, Dock. #1. His first petition was filed 190 days after his state court proceedings were no longer pending, or a total of 414 days after his conviction became final. Thus, even his first petition was untimely.

Finally, Petitioner asserts no grounds for equitable tolling. The United States Supreme Court has clearly stated that filing requirements should not be lightly disregarded:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 65 L. Ed. 2d 532, 100 S. Ct. 2486 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Badlwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984). Because this application is

filed after the deadline established in 28 U.S.C. § 2244, the Court recommends that the application be dismissed as untimely.

While this Court recommends that Petitioner's application be dismissed as untimely and determines that Respondents did not waive the statute of limitations defense, the Court reviews Petitioner's claims below for alternative grounds. *Evans v. Chavis*, 546 U.S. 189, 194 (2006) (noting that the Court may address the merits of the petition "where the court wants to give a reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it was not merely a procedural technicality that precluded him from obtaining relief." (quoting *Carey v. Safford*, 536 U.S. 214, 225-26 (2002)).

### C.    Procedurally Barred Claims

Respondents argue that claims three through seven are procedurally defaulted, because claims three, four, and seven were only raised in Petitioner's post-conviction proceedings and claims five and six were only raised before this Court. First, only those claims raised on direct appeal are properly exhausted, because Petitioner failed to timely petition for writ of certiorari to the Colorado Supreme Court when the Colorado Court of Appeals denied his post-conviction appeal. Response, Exh. S.; *O'Sullivan*, 526 U.S. at 847 (requiring a state prisoner to timely file a petition for discretionary review by the state supreme court to fully exhaust state remedies). A review of the record establishes that Petitioner raised claims one, two, and four on direct appeal. Although Respondents' argue that claim four was only raised in his post-conviction proceedings, Petitioner did raise the substance of claim four, framed as a constitutional issue, on direct appeal. Response, Exh. B, p. 17. Thus, these claims are exhausted. Claims three, five, six, and seven are not exhausted, because these claims can be found nowhere in Petitioner's direct appeal. Petitioner argues that claim

9

five, his equal protection claim, was raised throughout his pleadings. However, "'the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Heckard v. Tafoya*, No. 03-2087, 2007 U.S. App. LEXIS 2206, *14 (10th Cir. Jan. 30, 2007) (citation omitted). Petitioner did not raise this claim as an equal protection claim in state court, and it is, therefore, unexhausted.

Nevertheless, unexhausted claims may be reviewed if exhaustion would be futile. *Bear v. Boone*, 173 F.3d 782, 785 (10th Cir. 1999). Colorado's successive petition rule prevents Petitioner from raising new issues in a second post-conviction motion or from attempting to raise claims that could have previously been presented in an appeal. *See generally People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule). Accordingly, Petitioner has no prospect of obtaining relief in state court for these claims. In situations such as this, federal courts apply an anticipatory bar. *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation and quotations omitted).

Under an anticipatory bar, this Court is procedurally barred from considering the Petitioner's claims, unless he can demonstrate "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result. *See Coleman*, 501 U.S. at 750. To demonstrate cause and actual prejudice, Petitioner must show that efforts to raise the claims at earlier stages were impeded by "some objective factor," such as a factual or legal basis for a claim that was not reasonably available during prior proceedings. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). This objective standard considers not what a particular attorney or *pro se* Petitioner actually knew,

but whether the claim was "reasonably available" upon diligent inquiry. *Id*. at 494, 496. In this case, Petitioner presents no evidence that these claims were not reasonably available during his direct appeal, nor any objective factor demonstrating he could not timely file a petition for writ of certiorari for his post-conviction appeal. Petitioner only argues that any procedural misstep was due to his *pro se* status and would not have occurred if he had been appointed counsel. Traverse at 10. Because, Petitioner has no constitutional right to post-conviction counsel, this argument is unavailing, and Petitioner has failed to establish cause for this delay. *Lawrence v. Florida*, ___ U.S. ___, 127 S. Ct. 1079, 1085 (2007).

To demonstrate a fundamental miscarriage of justice, Petitioner must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998).

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Supreme Court has counseled, however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321. The threshold inquiry requires Petitioner to produce "*new* evidence," not presented at trial. *House v. Bell*, ___ U.S. ___, 126 S. Ct. 2064, 2077 (2006) (emphasis added). Here, Petitioner provides no evidence that was not already considered by the jury at his trial and, therefore, has failed to meet the high threshold for the actual innocence exception. Accordingly, Petitioner's claims three, five, six, and seven are procedurally barred.

### D. Petitioner's Remaining Claims

#### 1. Claim One: Whether the "Wharton Rule" precludes Petitioner's conviction for conspiracy

Petitioner claims that he should not have been convicted of conspiracy, because no evidence was presented at trial to support the conspiracy charge. Respondents argue that this Court can provide Petitioner no relief on this claim, because the Colorado Court of Appeals reversed his conviction on this charge. The Colorado Court of Appeals found that the evidence was insufficient to support a conspiracy charge, because nothing in the trial record indicated that Petitioner knew the supplier would re-sell the cocaine to the informant. *See* Response, Exh. D, pp. 5-6. The Court agrees. Petitioner has received all the relief available on this claim. Petitioner argues that relief is still proper because, without the conspiracy charge, his conviction for sale of cocaine cannot stand. Application at 6. In this regard, Petitioner has collapsed claims one and two, and the Court will consider this argument below. Because Petitioner received full relief on this claim, Claim 1 is now moot.

#### 2. Claim Two: Whether the evidence was sufficient to establish Petitioner's conviction for the sale of cocaine

Petitioner claims that hearsay statements that support the conspiracy charge were improperly admitted, and that, absent these statements, the evidence to support his conviction for the sale of cocaine was insufficient. Petitioner contends that the reversal of his conspiracy conviction supports his argument that the hearsay statements should not have been admitted at trial. First, the Colorado Court of Appeals found no error in admitting the hearsay statements, because the prosecution proved the conspiracy charge by a preponderance of the evidence at a pre-trial hearing, with evidence that was not later presented at trial. Response, Exh. D, p. 7. The Court of Appeals recognized that such

rulings should be made based on the evidence presented at trial, rather than at a pre-trial hearing, but noted that the defendant sought the pre-trial ruling. Because of this posture, the Court concluded the sufficiency of the evidence presented at the pre-trial hearing allowed for the admission of the hearsay statements. *Id.*

Because the state court's decision rests on state law evidentiary issues, review of this evidentiary ruling is limited to whether its admission rendered the trial fundamentally unfair. *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979). The United States Supreme Court "has stated many times that 'federal habeas corpus relief does not lie for errors of state law' . . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Hence, this Court cannot review whether the Court of Appeals determination of state law was correct. Rather, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68 (citations omitted).

The statements admitted are hearsay statements, which implicate the Confrontation Clause. The Confrontation Clause provides a defendant with the right to cross-examine his accusers, and a primary purpose of hearsay rules is to protect this right. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970). Yet, "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." *Id.* at 82. Here, Petitioner was able to cross-examine the informant as to what the supplier actually said to him. In fact, the supplier testified at trial, admitted making the statements, but stated that he purposefully lied to the informant for personal gain. Assuming *arguendo* that the statements were admitted in error, Petitioner received every opportunity guaranteed by the constitution to confront the witness and test

the truthfulness of his statements. *California v. Green*, 399 U.S. 149, 161 (1970) (holding that the determinative question is "whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement"). Moreover, the Confrontation Clause is not violated by the admission of out-of-court statements by a witness who also testifies at trial. *Id.*; *see generally Crawford v. Washington*, 541 U.S. 36 (2004). Thus, even assuming the trial court erred in allowing these statements, such an error does not rise to a constitutional level, nor does it render Petitioner's trial fundamentally unfair.

Second, because the Colorado Court of Appeals found no error in admitting the hearsay statement, the court considered the testimony of both the supplier and the informant and found the evidence sufficient to support a conviction for the sale of cocaine as follows:

> The jury was free to believe all, some, or none of each witness' testimony. In light of its verdict, the jury apparently found the account the supplier told the informant more believable than his testimony at trial, and we will not revisit such determination of credibility. Taking the supplier's hearsay statements and the rest of the evidence presented in the light most favorable to the prosecution, and aware that key parts of it are circumstantial and indirect, we conclude that the prosecution presented sufficient evidence to support a conclusion by a reasonable fact-finder that defendant sold cocaine to the supplier on this occasion.

Response, Exh. D, pp. 4-5 (citations omitted).

In reviewing a habeas petition for sufficiency of evidence, the Court must consider all evidence admitted at trial. *Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988). In doing so, the Court must view the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* Court explained:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

> inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Id.* Under the AEDPA, the Tenth Circuit has not yet addressed whether a sufficiency-of-evidence claim should be reviewed as a legal or factual question. *Wright v. Hines*, 42 Fed. Appx. 375, 376 (10th Cir. 2002). Review as a legal question appears to be more appropriate, because this Court must review the Colorado Court Appeals' application of the *Jackson* test for sufficiency of evidence. *See Sarausad v. Porter*, 479 F.3d 671, 677 (9th Cir. 2007). Even so, the Court considers both.

Here, Petitioner argues that the evidence is insufficient to establish that the supplier received the cocaine from him. At trial, the informant testified that the supplier informed him he needed to buy the cocaine from Petitioner. The supplier admitted these statements and testified that he had lied to the informant to get a ride to Longmont. The supplier also explained that he had borrowed money from Petitioner and needed to make a payment on the loan. It was within the province of the jury to resolve this conflict in the supplier's testimony and weigh the credibility of each statement. *Jackson*, 443 U.S. at 319. The Court of Appeals applied the proper test and concluded that a reasonable factfinder could determine that the statements made to the informant were more credible that the statements made in court. This conclusion is neither an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.

### 3. Claim Four: Whether Petitioner's sentence based on an enhancement not found by the jury is unconstitutional

Petitioner claims that his sentence violated his right to due process. Petitioner was sentenced based on an aggravating factor of a prior conviction for sale of a controlled substance. Petitioner

argues that a jury should have determined whether he was previously convicted. In this regard, Petitioner's reliance on *Apprendi v. New Jersey*, 540 U.S. 466 (2000), is misplaced. *Apprendi* expressly excludes "the fact of a prior conviction" from the aggravating elements that must be submitted to a jury. *Id.* at 490. Thus, Petitioner's aggravated sentence based on a prior conviction is constitutionally permissible, and Petitioner is not entitled to relief on this ground. *Grady v. Estep*, 210 Fed. Appx. 814, 816 (2007).

## III.   Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that the Amended Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed January 24, 2006; Docket #5] be **dismissed** as time-barred or, alternatively, be **denied** on the merits, and that this case be dismissed with prejudice. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[2]

---

[2] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Dated at Denver, Colorado this 19th day of June, 2007.

                                                BY THE COURT:

                                                s/ Michael E. Hegarty
                                                Michael E. Hegarty
                                                United States Magistrate Judge